OPINION
{¶ 1} Defendant-appellant, Kevin Thomas, appeals from his convictions and sentence in the Butler County Court of Common Pleas for one count each of attempted rape and gross sexual imposition. For the reasons outlined below, we affirm the decision of the trial court.
 {¶ 2} On May 25, 2005, appellant was indicted on one count of attempted rape in violation of R.C. 2923.02 and R.C. 2907.02(A)(2), a felony in the second degree, one count of kidnapping in violation of R.C. 2905.01(A)(4), a felony in the second degree, and one count of gross sexual imposition in violation of R.C. 2907.05(A)(1), a felony in the fourth degree. Appellant entered pleas of not guilty and the case proceeded to a jury trial, held November 7, 2005 through November 9, 2005.
 {¶ 3} The evidence at trial established that on April 10, 2005 at approximately 10:00 p.m., Mrs. Celia Garcia was walking home with her family and a child she was baby-sitting. Mrs. Garcia testified that she was walking a short distance ahead of the rest of her family and pushing the child in a baby stroller when she observed appellant crouched and hiding behind a car. Noticing this, Mrs. Garcia testified that she attempted to turn and run, but appellant grabbed her and proceeded to roughly grab, squeeze, and grope her breasts and buttocks while stating that "he liked [her]." Mrs. Garcia testified that she began screaming and struggled to escape his grip, but that appellant was "squeezing [her] really hard" and "pushing [her] back against him." Mrs. Garcia also testified that appellant was pulling her and attempting to force her into the nearby alley. Mrs. Garcia testified that appellant lifted her off her feet and successfully pulled her about three feet towards the alley. Mrs. Garcia stated that she continued to struggle and scream until her daughter, who had been following a short distance behind her mother, came running towards them. Mrs. Garcia testified that appellant then threw her to the ground and ran away, and stated that the whole sequence of events took place over approximately five seconds. Mrs. Garcia was able to identify appellant and he was arrested the same night.
 {¶ 4} Mrs. Garcia's testimony regarding appellant's conduct and statements were corroborated by her daughter, Dana Garcia. Dana testified that she was walking with her sister and father a short distance behind her mother, when she heard her mother cry out for help. Dana testified that as she crossed the street she saw her mother up ahead and that appellant had his arms around her trying to pull her to the alley. She testified that Mrs. Garcia was crying and struggling but that appellant was telling her to "shut up," saying "I like you" and "I want you" as he pulled her towards the alley. As she ran towards her mother, Dana testified that appellant threw Mrs. Garcia to the ground and left.
 {¶ 5} Other testimony presented by the state at trial included that of Gene and Gloria Lewis, friends of appellant. Mr. and Mrs. Lewis testified that appellant was at their home immediately prior to the attack on Mrs. Garcia, that he was intoxicated, and that he made statements indicating that he wanted sexual gratification. The Lewises testified that appellant had been drinking when he arrived at their house on the night of April 10, and that he asked Mr. Lewis to bring him more alcohol. Describing appellant as "pretty well drunk," Mr. Lewis testified that he refused. Mrs. Lewis testified that appellant then began asking inappropriate questions, such as whether she and her husband were going to have sex that night. Mrs. Lewis also testified that appellant stated that he had been in an argument with his wife and wasn't going to get any sex that night and that he would have to go "jack off" somewhere. Mrs. Lewis testified that appellant then began petting her hair and eventually began "trying to touch things that he shouldn't be touching." When asked where appellant was trying to touch, Mrs. Lewis stated, "right here in front of me." Mrs. Lewis testified that Mr. Lewis told appellant to leave Mrs. Lewis alone and that they then asked appellant to leave. The Lewises also both testified that shortly after appellant left, they heard a yell outside.
 {¶ 6} At the close of the state's evidence, appellant moved for a dismissal of the charge of attempted rape pursuant to Crim.R. 29, arguing that the evidence was insufficient to support a conviction for attempted rape. The court, although stating that it was "hard to say what [appellant's] intent was," denied the motion. The jury found appellant guilty on all counts. Prior to sentencing, appellant filed a motion requesting that the court merge the convictions for kidnapping and attempted rape as they were allied offenses of similar import. The trial court granted the request to merge the convictions, sentencing appellant on only the attempted rape and gross sexual imposition convictions. Appellant was sentenced to four years imprisonment for the offense of attempted rape and 12 months imprisonment for the offense of gross sexual imposition, with the sentences ordered to run concurrently. Appellant then filed this appeal, raising the following three assignments of error for our review.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT ENTERED A JUDGMENT OF CONVICTION AGAINST HIM FOR ATTEMPTED RAPE BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN SUCH A CONVICTION."
 {¶ 9} Appellant contends that the trial court erred in permitting the charge of attempted rape to be submitted to the jury and argues that state failed to provide evidence sufficient to prove that appellant attempted to rape Mrs. Garcia. Appellant argues that there was no evidence presented at trial of any overt act which convincingly demonstrated an intent to commit the crime of rape as opposed to some other sex offense, such as gross sexual imposition.
 {¶ 10} In reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. State v. Lucas, Tuscarawas App. No 2005AP090063,2006-Ohio-1675, ¶ 8, citing State v. Jenks (1991), 61 Ohio St.3d 259. "[Sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Haney, Clermont App. No. CA2005-07-068, 2006-Ohio-3899.
 {¶ 11} R.C. 2907.02(A)(2) defines the elements of the crime of rape, stating that, "no person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Sexual conduct" is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 12} The offense of gross sexual imposition, on the other hand, is defined as "sexual contact with another, not the spouse of the offender * * * when any of the following applies: (1) the offender purposely compels the other person * * * to submit by force or threat of force." R.C. 2907.05(A)(1). "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation, the thigh, genitals, buttock, pubic region, or, if the person is female, a breast, for the purpose of sexually arousing or gratifying either person." R.C.2907.01(B).
 {¶ 13} The question for this court then becomes whether there was sufficient evidence presented to demonstrate that appellant intended and attempted to commit forcible "sexual conduct" as opposed to simply forcible "sexual contact." See State v. Proctor (Nov. 17, 1997), Butler App. Nos. CA96-12-255, CA96-12-256. R.C. 2923.02(A) defines a criminal attempt and provides that "no person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." "A `criminal attempt' is when one purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." State v. Chance, Butler App. No. CA2005-09-373, 2006-Ohio-3622, ¶ 43, quoting State v. Woods (1976),48 Ohio St.2d 127, death penalty vacated (1978), 438 U.S. 910,98 S.Ct. 3133, overruled on other grounds by State v. Downs (1977),51 Ohio St.2d 47. In State v. Davis, 76 Ohio St.3d 107, 114, 1996-Ohio-414, the Ohio Supreme Court further discussed the substantial step test as it applies to attempted rape, stating that "attempted rape requires that the actor (1) intend to compel submission to sexual conduct by force or threat, and (2) commit some act that `convincingly demonstrates' such intent."
 {¶ 14} A "substantial step" involves conduct which is "strongly corroborative of the actor's criminal purpose." Chance at ¶ 43. The Ohio Supreme Court, in formulating the standard for identifying conduct which constitutes a substantial step, stated that "intent to commit a crime does not of itself constitute an attempt, nor does mere preparation."Woods, 48 Ohio St.2d at 131. However, the court went on explain that "those acts which are so dangerously close to resulting in a crime that intervention and arrest by the police are justified," are punishable as a substantial step in a criminal attempt. Id. at 131-132. The Ohio Supreme Court also noted that such acts need not be the "last proximate act" prior to the consummation of the felony. Id., see, also,Chance at ¶ 44. It is this "substantial step," or overt act, which appellant argues was missing from the evidence presented in this case. Appellant contends that the state failed to present evidence of any act which "convincingly demonstrates" that appellant intended to commit the crime of rape.
 {¶ 15} However, in State v. Keenan (Nov. 17, 1997), Clermont App. No. CA96-11-105, this court found sufficient evidence to support the defendant's conviction for attempted rape under facts similar to the case at bar. In Keenan, the victim testified that the defendant, an acquaintance, came to her residence while she and her son were at home. She stated that she was showing the defendant her son's bedroom when the defendant pushed the bedroom door shut behind them and grabbed her around her chest, covering her mouth. The victim testified that the defendant told her he had a gun and that if she did not do what he told her to he would hurt "the boy." She testified that the defendant then told her to sit on the bed, at which point she noticed that his pants were unzipped, although she admitted that she could not recall whether they had been zipped prior to the attack. The victim testified that she then began having trouble breathing due to a medical condition and that the defendant allowed her to leave the room, begging her not to tell anyone about what had happened.
 {¶ 16} On appeal of his conviction for attempted rape, the defendant argued that there was virtually no evidence showing that he had intended or attempted to rape the victim. However, we found that a rational jury could conclude beyond a reasonable doubt that the defendant's conduct amounted to attempted rape. Keenan at p. 11. In reviewing the defendant's conduct, coupled with evidence that the defendant had previously made sexually suggestive remarks to the victim, we found that the defendant had accomplished a substantial step toward the commission of the crime of rape. Id.
 {¶ 17} Similarly, in a case decided the same day as Keenan, we found that the state had submitted sufficient evidence of attempted rape where the victim testified that she awoke in her home to find someone on top of her, trying to get his hand down near her underwear. State v.Proctor (Nov. 17, 1997), Butler App. Nos. CA96-12-255, CA96-12-256. The victim testified that the defendant was wearing only shorts and socks and that as she kicked and struggled to escape the defendant covered her eyes and mouth and held her down, but eventually released her and ran out of the house. In reviewing the evidence in a light most favorable to the prosecution, and drawing reasonable inferences from that evidence, this court found that the defendant's actions in lying on top of the victim in her bed, attempting to remove her underwear while dressed in only shorts and socks himself, and covering the victim's mouth to keep her from screaming was sufficiently indicative of his intent to commit sexual conduct as opposed to simply sexual contact. Proctor, at p. 6; see, also, State v. Patterson (Mar. 2, 1999), Auglaize App. No. 2-98-24 (finding sufficient evidence to support conviction for attempted rape where defendant told victim "she knew what he wanted" and "he wanted her," physically pushed open door to her apartment, chased her through the apartment, and grabbed her arms before she escaped).
 {¶ 18} The facts and circumstances of each particular case must be evaluated when determining if an offender's conduct will be held to be a substantial step. Woods at 132. In ascertaining the intentions of an offender, the Ohio Supreme Court has held that intent may be inferred from the act itself and the surrounding circumstances, including the acts and statements of the defendant surrounding the time of the offense. State v. Hutchinson (1999), 135 Ohio App.3d 459, 457, citingState v. Garner, 74 Ohio St.3d 49, 1995-Ohio-168.
 {¶ 19} We have thoroughly reviewed the evidence presented by the state in this case and, upon consideration thereof, we find that sufficient evidence was presented which, when viewed in a light most favorable to the prosecution, is sufficient to establish the essential elements of attempted rape beyond a reasonable doubt. Appellant argues that mere suspicion of what may have occurred had appellant not been interrupted by Mrs. Garcia's daughter is insufficient to support a conviction for attempted rape. However, we are presented with more than mere suspicion in this case. The facts of this case, as described above, reflect that: (1) appellant was lying in wait, crouched behind a car, when Mrs. Garcia came upon him, (2) he grabbed Mrs. Garcia, roughly groping and squeezing her breasts and buttocks, (3) he roughly pushed his body against hers, (4) he forcibly pulled her approximately three feet towards the nearby alley, telling her to "shut up" while she screamed for help and struggled to escape, (5) he told her "I like you," and "I want you." These actions, coupled with appellant's earlier statements to the Lewises, are sufficiently indicative of appellant's intent and constitute a substantial step in a course of conduct intended to culminate in the rape of Mrs. Garcia. Further, although appellant takes issue with the trial judge's comment that it was "hard to tell what [appellant's] intent was," made when ruling on appellant's Crim.R. 29 motion, we note that this comment does not require a finding that there was insufficient evidence for any reasonable trier of fact to find appellant's intent and the essential elements of the crime of attempted rape sufficiently established. Accordingly, we overrule appellant's first assignment of error.
 {¶ 20} Assignment of Error No. 2:
 {¶ 21} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT ENTERED A JUDGMENT OF CONVICTION AGAINST HIM FOR ATTEMPTED RAPE BECAUSE THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 22} Appellant argues that even if we are to find sufficient evidence to support a conviction for attempted rape, the overwhelming weight of the evidence supports a reversal of appellant's conviction as so logically unpersuasive as to create a manifest miscarriage of justice. We disagree.
 {¶ 23} While sufficiency of the evidence concerns the state's burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury, manifest weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." Thompkins, 78 Ohio St.3d at 387. "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." Id. In such a review, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. State v. Hancock,108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39, quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 24} However, while a reviewing court considers the credibility of the witnesses in a weight of the evidence review, "that review must nevertheless be tempered by the principle that weight and credibility are primarily for the trier of fact," in this case, the jury, as they are in "the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." State v.Kash, Butler App. No. CA2002-10-247, 2002-Ohio-415, ¶ 25; citingState v. DeHass (1967), 10 Ohio St.2d 230. Further, when there exists two reasonable views of the evidence, a reviewing court may not choose which view it prefers but must instead accede to the findings of the trier-of-fact. State v. Gore (1999), 131 Ohio App.3d 197, 201, citingSeasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Thompkins, 78 Ohio St.3d at 387. Further, an appellate court will not reverse a judgment that was the result of a jury trial as against the weight of the evidence unless there is a unanimous concurrence of all three judges on the appellate panel. Id. at 389.
 {¶ 25} We find no reason to disturb the findings of the jury with regard to appellant's convictions. The state provided sufficient credible evidence, as described in detail above, to establish that appellant intended and attempted to rape Mrs. Garcia on April 10, 2005. Mrs. Garcia's testimony about the circumstances of her attack, sufficient in itself, was further corroborated by the testimony of both her daughter and her husband, who observed portions of the attack as they approached. We cannot say that the jury clearly lost its way in finding Mrs. Garcia's testimony, and the testimony of the other state's witnesses, to be competent, credible, and reliable. Accordingly, appellant's second assignment of error is overruled.
 {¶ 26} Assignment of Error No. 3:
 {¶ 27} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN SENTENCING HIM FOR ATTEMPTED RAPE AND GROSS SEXUAL IMPOSITION BECAUSE THESE CHARGES ARE ALLIED OFFENSES OF SIMILAR IMPORT WITHOUT A SEPARATE ANIMUS AND ARE THEREBY NOT SUBJECT TO MULTIPLE SENTENCES PURSUANT TO R.C. 2941.25."
 {¶ 28} Appellant argues that trial court erred in sentencing him on both attempted rape and gross sexual imposition because the crimes are allied offenses of similar import and he may therefore only be convicted of one such offense.
 {¶ 29} Allied offenses of similar import are governed by R.C. 2941.25, which provides:
 {¶ 30} "(A) Where the same conduct by a defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 31} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 32} In ascertaining whether offenses are of similar import under R.C. 2941.25, a court first compares the statutorily defined elements of the offenses to determine whether they correspond to such a degree that the commission of one crime will result in the commission of the other.State v. Rance, 85 Ohio St.3d 632, 638, 1999-Ohio-291; State v.Bates, Fayette App. No. CA2001-10-018, 2002-Ohio-5512. When making this determination, the court must examine the elements of the offenses in the abstract, rather than in light of the particular facts of the case. Id. If the elements of the offenses correspond to such a degree that the commission of one offense will result in the commission of the other, then "the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus." Id. at 638-639.
 {¶ 33} Appellant contends that the offense of attempted rape cannot be committed without committing the offense of gross sexual imposition, that the state presented the same evidence to establish both offenses, and that his conviction for gross sexual imposition is therefore contrary to law. In response, the state argues that appellant has waived any argument with regard to allied offenses by his failure to raise the argument to the trial court. It is well-established that an appellant's failure to raise an argument with regard to allied offenses in the trial court constitutes a waiver of that argument on appeal. State v.Comen (1990), 50 Ohio St.3d 206, 211, State v. Smith (1997),80 Ohio St.3d 89, 118, State v. Yarbrough, 104 Ohio St.3d 1, ¶ 96,2004-Ohio-6087. However, appellant argues that this court should find that the trial court's failure to sua sponte merge his convictions for attempted rape and gross sexual imposition as allied offenses constitutes plain error. The state cites Comen and Smith for the proposition that the Ohio Supreme Court has declined to apply the doctrine of plain error to the waiver of allied offense arguments and that such a waiver therefore constitutes a waiver of the error claimed.
 {¶ 34} Indeed, a number of appellate districts, citing toComen and Smith, have declined to apply a plain error analysis when reviewing an appellant's waiver of arguments regarding allied offenses. See State v. Shie, Cuyahoga App. No. 86464, 2006-Ohio-2314 (finding appellant's allied offenses argument with regard to consecutive sentences imposed for attempted rape and gross sexual imposition waived without further analysis); State v. Swanson, Mahoning App. No. 05 MA 79,2006-Ohio-4957 (finding crimes of simple assault and aggravated menacing were not allied offense of similar import but noting that appellant had failed to raise the argument to the trial court and that sentencing issue relating to allied offenses is not the type of error to which the plain error rule applies). However, we note that the recognition of plain error is a permissive practice to be applied at the discretion of the appellate court. In a practice of that discretion, a number of appellate districts, including our own, have found the doctrine of plain error applicable to the waiver of allied offense arguments. SeeState v. Crowell (June 14, 1999), Preble App. No. CA98-10-019 (applying plain error analysis to defendant's waiver of allied offense argument and finding no error); State v. Hippie (May 21, 1999), Miami App. No. 98CA49, (finding plain error in court's failure to merge convictions for three counts of carrying a concealed weapon despite defendant's failure to raise issue to trial court); State v. Hadi (Mar. 20, 1996), Summit App. No. 1724 (finding plain error in trial court's failure to merge convictions of child endangering and felonious assault despite defendant's failure to raise issue to trial court).
 {¶ 35} It further is clear that the Ohio Supreme Court has, sinceComen and Smith, seen fit to apply the doctrine of plain error in such instances. State v. Foust, 105 Ohio St.3d 137, 2004-Ohio-7006 (applying plain error analysis to defendant's waiver of allied offense argument and finding no error in failure to merge convictions for kidnapping, rape, and gross sexual imposition); State v. Yarbrough,104 Ohio St.3d 1, 2004-Ohio-6087 (citing Comen and finding plain error in trial court's failure to merge convictions for receiving stolen property and theft of property despite defendant's failure to raise the issue to the trial court.) However, while the doctrine of plain error may be applicable at the discretion of the appellate court in cases of allied offenses, we decline to apply that doctrine or find plain error in this case. Even if we were to engage in the test articulated in Ranee, the circumstances of this case amount to more than waiver of the arguments relating to allied offenses but rises to the level of invited error on the part of appellant.
 {¶ 36} In looking to the transcript of appellant's sentencing hearing in which appellant moved the court to merge the convictions for kidnapping and attempted rape, the following exchange took place:
 {¶ 37} "THE COURT: So the court will grant the motion merging kidnapping with the attempted rape, and we will sentence the defendant on the kidnapping conviction.
 {¶ 38} "COUNSEL FOR APPELLANT: Is it the kidnapping or — my argument is the kidnapping was to merge into the attempted rape, and he was to be sentenced on the attempted rape and the GSI. * * *
 {¶ 39} "THE COURT: I mean I'll merge the kidnapping into the attempted rape.
 {¶ 40} "COUNSEL FOR APPELLANT: That's correct.
 {¶ 41} "THE COURT: And sentence on the attempted rape and GSI.
 {¶ 42} "COUNSEL FOR APPELLANT: Thank you, Your Honor."
 {¶ 43} It is clear that appellant in this case did not merely waive the argument with regard to allied offenses but specifically requested the merger of kidnapping and attempted rape and agreed to be sentenced on the attempted rape and gross sexual imposition. Pursuant to the invited error doctrine, "appellant cannot now assert sentencing errors that appellant himself induced the court to make." State v. Baker,152 Ohio App.3d 138, 2002-Ohio-7295, ¶ 23. We therefore find that any error that the trial court may have made in failing to also merge the convictions for attempted rape and gross sexual imposition was induced by appellant himself and is therefore not reversible. Accordingly, appellant's third assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.