JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant Benjamin Hardley (appellant) appeals various aspects of the trial court's convicting him of kidnapping and attempted rape of a minor in two separate criminal cases, and he appeals his prison sentence of ten years to life. After reviewing the facts of the case and pertinent law, we affirm his convictions, vacate his sentence, and remand the case for a new sentencing hearing and for a sexual predator classification hearing in Case No. CR-445180.
 I. {¶ 2} This appeal involves two similar criminal cases for which appellant was sentenced together. The facts of each case will be discussed separately below. Before the nature of the offenses are discussed, however, it should be noted that at the age of four, appellant was identified as being mildly mentally retarded; his IQ test results range from 46 to 68; he cannot read or write; and he was institutionalized when he was a teenager and a young adult for various behavioral problems. Appellant, who was born July 6, 1954, has had no legal problems since the 1970s and has been employed at Goodwill Industries International, Inc. for approximately the past 20 years.
Case No. CR-425542 {¶ 3} On July 5, 2002, a man approached then five-year-old K.C., who was riding his bike in the enclosed yard of the apartment complex where he lived, and offered him a piece of candy. When K.C. put his hand out, the man grabbed the boy's arm and pulled him into a residential building, up the stairs, and into an *Page 4 
apartment. According to K.C., the man asked him to pull down his pants, show him his "weeny," and "give me some booty." When K.C. refused, the man pulled K.C.'s pants down. The man then pushed K.C. to the floor, pulled down his own pants and attempted to lay down on top of K.C. According to K.C, the man "tried to put his private in my private." K.C. then elbowed the man and told the man to get off of him. K.C. managed to escape from the situation and ran home to his apartment in the same complex. K.C. told his mother that a man tried to hurt him in a neighboring apartment, but that he did not know who the man was. K.C, his mother, and his stepfather walked around the complex until they arrived at the door of one of the units, and K.C. told his mother that was where the incident happened. K.C.'s mother and stepfather knocked on the door and tapped on the window; however, no one responded. As they walked away from the area, they looked up and saw appellant on the balcony of the apartment K.C. identified, hovering over the bannister. K.C.'s stepfather asked appellant whether he knew the boy. Appellant responded as follows: "Your son is a liar. He needs to be whupped, and he needs to stop lying on grown persons."
 {¶ 4} Soon after this, the police arrived on the scene and arrested appellant. Appellant was indicted in Case No. CR-425542 for kidnapping with a sexual motivation specification, attempted rape, and gross sexual imposition. In August of 2002, Dr. Aronoff of the court psychiatric clinic found appellant incompetent to stand trial due to mild mental retardation. On August 30, 2002, the court ordered him to be *Page 5 
transferred to Northcoast Behavioral Healthcare System (NBHS) for one year for restoration to competency to stand trial.
 {¶ 5} On September 30, 2003, the court held a competency hearing, where the state and appellant stipulated that appellant was incompetent to stand trial and unrestorable, based on an August 26, 2003 competency restoration report by Dr. Sirkin of NBHS. The court also found that appellant did not meet the criteria for civil commitment and ordered the case dismissed and appellant released.
Case No. CR-455180 {¶ 6} On July 16, 2004, at approximately 11:00 p.m., appellant went to Moratta Davis' (Davis) house, allegedly needing a place to spend the night. Appellant knew Davis because he used to work with her at Goodwill and, although Davis no longer worked there at the time in question, the two remained friends. On the morning of July 17, 2004, Davis and two of her children walked to pick up breakfast, leaving Davis' five-month-old son J.D. at the house with Davis' brother, brother-in-law, and appellant. When Davis returned less than ten minutes later, both her brother and brother-in-law were gone, and as she walked past the window of her house, she saw appellant sitting on the couch with her son on his lap. Appellant's erect penis was sticking up out of the waistband of his jogging shorts. Davis walked into the house and confronted appellant, who denied doing anything. A brief chase ensued, but Davis held appellant until the police arrived and arrested him. *Page 6 
 {¶ 7} On August 6, 2004, appellant was indicted for rape with sexually violent predator specifications, aggravated burglary, and kidnapping with sexual motivation and sexually violent predator specifications. On August 30, 2004, the court referred appellant to the psychiatric clinic for an evaluation of his competency to stand trial. A September 20, 2004 competency report by Dr. Hernandez declares appellant incompetent and unrestorable. The state objected to this report and requested an independent evaluation, which the court granted. The second report, dated January 8, 2005 and written by Dr. Karpawich, declared appellant competent to stand trial, although the report recognized appellant's intellectual limitations, and recommended that the parties involved use simple language and afford appellant frequent opportunities to consult with his attorney.
 {¶ 8} On January 25, 2005, the court ordered appellant to be re-examined by the clinic that declared appellant incompetent on September 20, 2004. The third competency evaluation, dated March 7, 2005 and written by Dr. Hall, declared appellant competent to stand trial, albeit under conditions to accommodate his mental limitations. However, because this evaluation was completed by a different doctor than the September 20, 2004 evaluation, on March 9, 2005, the court ordered yet another evaluation. On April 8, 2005, Dr. Hernandez issued a report declaring appellant competent to stand trial, noting that consideration should be made for his intellectual deficits. *Page 7 
 {¶ 9} On April 18, 2005, the state and appellant stipulated to the April 8, 2005 psychiatric evaluation declaring appellant competent to stand trial.
Case. No. CR-465074 {¶ 10} The state, upon learning of appellant's competency to stand trial in Case No. CR-455180, re-indicted appellant on April 27, 2005 in Case No. CR-465074 for the July 2002 offenses that were the original subject of Case No. CR-425542: kidnapping with sexual motivation specification; attempted rape; and gross sexual imposition. On August 4, 2005, the court ordered another competency evaluation in relation to re-indicted Case No. CR-465074. On September 14, 2005, the court found appellant competent to stand trial given the aforementioned conditions tailoring the proceedings to his mental capacity.
Convictions and sentencing {¶ 11} After conducting back-to-back bench trials in both cases, the court on March 13, 2006 found appellant guilty of kidnapping with sexual motivation specification in violation of R.C. 2941.147 and 2905.01 and guilty of attempted rape in violation of R.C. 2923.02 and 2907.02 for the 2002 offenses in Case No. CR-465074. On April 5, 2006, the court found appellant guilty of attempted rape with sexual violent predator specification and kidnapping with sexual motivation and sexual violent predator specifications for the 2004 offenses in Case No. CR-455180.
 {¶ 12} On June 16, 2006, the court sentenced appellant to ten years to life in prison for attempted rape and ten years in prison for kidnapping in Case No. CR-455180, *Page 8 
to run concurrently, and five years in prison for both charges in Case No. CR-465074, to run consecutive to Case No. CR-455180, for an aggregate prison term of 15 years to life. In addition, on June 16, 2006, the court found appellant to be a sexual predator pursuant to R.C.2950.09.
 {¶ 13} On June 27, 2006, however, the court vacated its June 16, 2006 sentence and resentenced appellant as follows: ten years to life for attempted rape and ten years to life for kidnapping in Case No. CR-455180, both counts to merge for sentencing purposes; a mandatory ten years for rape in Case No. CR-465074, to run concurrent to Case No. CR-455180; and a mandatory five years for kidnapping in Case No. CR-465074, to run consecutive to Case No. CR-455180. This new sentence also subjected appellant to an aggregate prison term of 15 years to life.
 II. {¶ 14} In his first assignment of error, appellant argues that "the trial court's failure to hold a competency hearing denied appellant of due process of law." Specifically, appellant argues that the court erred by not holding a competency hearing in both Case Nos. CR-455180 and CR-465074.
 {¶ 15} We must start with the legal premise that a "defendant is presumed to be competent to stand trial." R.C. 2945.37(G). If, however, the issue of defendant's competency to stand trial is "raised before the trial has commenced, the court shall hold a hearing on the issue * * *." R.C. 2945.37(B). *Page 9 
 {¶ 16} The procedural history of the instant case is extensive, and a time line of appellant's competency evaluations is required to further analyze this assignment of error.
. August 21, 2002 — Dr. Aronoff — Incompetent to stand trial; restorable (CR-425542)
. August 26, 2003 — Dr. Sirkin — Incompetent to stand trial; unrestorable (CR-425542)
. September 20, 2004 — Dr. Hernandez — Incompetent to stand trial; unrestorable (CR-455180)
. January 8, 2005 — Dr. Karpawich — Competent to stand trial (CR-455180)
. March 7, 2005 — Dr. Hall — Competent to stand trial (CR-455180)
. April 8, 2005 — Dr. Hernandez — Competent to stand trial (CR-455180)
. September 13, 2005 — Dr. Hernandez — Competent to stand trial (CR-465074)
 {¶ 17} In Case No. CR-455180, there is a journal entry dated April 18, 2005, that reads as follows: "State defense counsel stipulate to competency report dated 4-8-05 * * *." In addition, the court held a pretrial hearing on September 14, 2005, and there is a journal entry with the same date that states "defendant found competent to stand trial." In Case No. CR-465074, the same September 14, 2005 journal entry appears on the court's docket, finding appellant competent. A careful review of the record shows that no transcripts with either of these dates have been submitted for *Page 10 
our review. Although unclear from the record and both parties' briefs, it appears as if the court addressed appellant's competency at the September 14, 2005 hearing.
 {¶ 18} As to the stipulation to competency dated April 18, 2005, we find that this agreement renders appellant's competency a nonissue under the ambit of R.C. 2945.37, thus nulling the requirement of a competency hearing. In fact, stipulation is defined as: "A voluntary agreement between opposing counsel concerning the disposition of some relevant matter so that evidence on the matter does not have to be introduced at the trial." West's Legal Thesaurus/Dictionary (1985) 716-17. In addition, the September 14, 2005 finding of competency and the stipulation are supported by the four most recent psychological evaluations of appellant pronouncing him competent to stand trial. See, also, State v. O'Neill, Mahoning App. No. 188, 2004-Ohio-6805 (holding that [w]here the parties stipulate to the contents of the competency reports which opine that the defendant is competent, the parties stipulate to competency and waive the competency hearing"). Accordingly, appellant's first assignment of error is overruled.
 III. {¶ 19} In his second assignment of error, appellant argues that he "was denied effective assistance of counsel when his trial counsel stipulated to a competency report in CR-455180, failed to obtain an independent evaluation of defendant's competency, and failed to request a competency hearing." Specifically, appellant makes similar arguments as he did in his first assignment of error. *Page 11 
 {¶ 20} In order to substantiate a claim of ineffective assistance of counsel, an appellant must demonstrate that 1) the performance of defense counsel was seriously flawed and deficient, and 2) the result of appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v.Washington (1984), 466 U.S. 668; State v. Brooks (1986),25 Ohio St.3d 144. In State v. Bradley, the Ohio Supreme Court truncated this standard, holding that reviewing courts need not examine counsel's performance if appellant fails to prove the second prong of prejudicial effect. State v. Bradley (1989), 42 Ohio St.3d 136. "The object of an ineffectiveness claim is not to grade counsel's performance." Id. at 142.
 {¶ 21} In the instant case, appellant's counsel stipulated to his competency without requesting an additional psychological evaluation presumably because the four most recent evaluations found appellant competent to stand trial. The stipulation mooted the issue of requesting a competency hearing, and there is nothing in the record indicating that had another evaluation been done, the result would have been different. Appellant was subjected to seven competency evaluations in a three-year period, and nothing suggests that an eighth report would have resulted in a different outcome. As such, appellant's second assignment of error is without merit.
 IV. {¶ 22} Appellant's third and fourth assignments of error will be addressed together and they read as follows: "Appellant's constitutional right to due process *Page 12 
was violated in CR-455180 because his conviction was based on perjured testimony and because the state failed to disclose evidence in violation of Brady v. Maryland (1963), 373 U.S. 83 and Giglio v. UnitedStates (1972), 405 U.S. 150"; and "the trial court violated defendant's due process rights in CR-455180 when it prohibited defense counsel from participating in a review of documents for Brady/Giglio material and when it failed to turn over such material to the defendant." Specifically, appellant argues that his due process rights were violated when Davis, in Case No. CR-455180, perjured herself, or in the alternative, when the state failed to disclose prior statements Davis made that were inconsistent with her trial testimony.
 "[Deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with `rudimentary demands of justice.' This was reaffirmed in Pyle v. Kansas, 317 U.S. 213 (1942). In Napue v. Illinois, 360 U.S. 264 (1959), we said, `the same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.' Id. at 269. Thereafter Brady v. Maryland, 373 U.S. at 87, held that suppression of material evidence justifies a new trial `irrespective of the good faith or bad faith of the prosecution.' * * * We do not, however, automatically require a new trial whenever `a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict * * *' United States v. Keogh, 391 F.2d 138, 148 (CA2 1968)."
Giglio v. United States (1972), 405 U.S. 150, 153.
 {¶ 23} At some time prior to March 10, 2006, the trial court conducted an incamera inspection of documents relating to the investigation in Case No. CR-455180, and found there to be no exculpatory evidence; therefore, the documents were not admitted into evidence nor were they turned over to the defense. However, appellant now argues that three statements found in those documents were inconsistent with *Page 13 
Davis' trial testimony, resulting in perjury, or in the alternative, that the documents should have been turned over to defense counsel because they contained exculpatory evidence.
 {¶ 24} First, at trial, Davis testified that appellant had never been to her home before he arrived there on July 16, 2004. However, appellant argues that Davis made an oral statement to the investigating officer shortly after the commission of the offense, in which she stated that appellant visited her approximately five to six times per month, but that July 16, 2004 was the first time she let him spend the night.
 {¶ 25} Second, Davis' trial testimony was that she found appellant with her five-month-old son downstairs upon returning from picking up breakfast. However, appellant argues that Davis made a statement to the Cuyahoga County Department of Children and Family Services (CCDCFS) on January 21, 2005, in which she said appellant committed the offense against her son upstairs.
 {¶ 26} Third, Davis testified at trial that, although she had drug and alcohol problems in the past, she had been sober for five years at the time of the trial. However, appellant argues that the sealed records contain information that Davis had relapsed since then.
 {¶ 27} Appellant argues that while the sealed records "appear completely innocuous" standing alone, when viewed in the context of the state's case against appellant, the records become material because they affect Davis' credibility, and she was the key material witness in the case. The state, on the other hand, argues that *Page 14 
Davis did not sign the police report in question, that Davis did not specify where appellant visited her, i.e., at home, work or another place, that Davis' daughter testified she had never met appellant before the night of July 16, 2004, and that including Davis' statement to the police would not have changed the outcome of the case. Additionally, the state argues that Davis' statement to CCDCFS was made six months after the incident occurred and was nothing more than a mischaracterization. Finally, the state argues that Davis' sobriety is a marginal issue that did not impede appellant confronting his accuser, presenting a defense, or receiving a fair trial.
 {¶ 28} The lynchpin of appellant's Giglio/Brady argument is whether the suppressed evidence is material.
 "[The] touchstone of materiality is a `reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A `reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression `undermines confidence in the outcome of the trial.'"
Kyles v. Whitley (1995), 514 U.S. 419, 506 (quoting United States v.Bagley (1985), 473 U.S. 667, 678).
 {¶ 29} We find that the alleged inconsistencies in Davis' statements are about issues tangential to the merits of the state's case against appellant, and are thus immaterial. The mere possibility that the defense may have used them in an attempt to affect Davis' credibility is not enough to undermine the confidence of appellant's *Page 15 
convictions. Accordingly, appellant's third and fourth assignments of error are overruled.
 V. {¶ 30} Appellant's fifth and sixth assignments of error will be addressed together and they read as follows: "Appellant's conviction[s] for attempted rape and kidnapping in CR-465074 were not supported by sufficient evidence"; and "defendant's convictions in CR-465074 were against the manifest weight of the evidence."
 {¶ 31} When reviewing sufficiency of the evidence, an appellate court must determine "[w]hether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259.
 {¶ 32} The proper test for an appellate court reviewing a manifest weight of the evidence claim is as follows:
 "The appellate court sits as the `thirteenth juror' and, reviewing the entire record, weighs all the reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 33} Case No. CR-465074 involves the alleged kidnapping and attempted rape of five-year-old K.C. R.C. 2905.01 defines kidnapping as removing the victim from the place he or she was found. In addition, appellant was found guilty of committing this offense with *Page 16 
sexual motivation pursuant to R.C. 2941.147. Appellant was also convicted of attempted rape, which is defined in R.C. 2923.02 and2907.02 as attempting to "engage in sexual conduct with another * * * person [who] is less than thirteen years of age * * *." The gist of appellant's arguments in these two assignments of error is twofold: first, that the state did not establish appellant's identity as the perpetrator of the crimes, and second, that the state did not present enough evidence that a crime even occurred.
 {¶ 34} Appellant argues that at trial, K.C. could not identify him as the offender. However, K.C. did recollect that the offender was wearing a blue stocking-type cap and blue jogging pants, and had no shirt on. K.C. also testified about the apartment where the offenses took place, identifying pictures of both the interior and the exterior of the unit. In addition, K.C.'s mother made an in-court identification of appellant as the man who was standing on the balcony of the apartment that K.C. identified as the crime scene, wearing a do-rag and lounge pants, with no shirt on. Furthermore, K.C.'s mother testified that when asked if appellant knew her son, appellant immediately became defensive and called her son a liar, despite that nothing had been mentioned of a sexual assault or similar offense.
 {¶ 35} Appellant next argues that there is no physical evidence of the crime and that the only witness to the crime was the victim, K.C, and his testimony was not credible. Specifically, appellant argues that K.C.'s medical reports from after the alleged incident show no signs of physical injury, sexual in nature or otherwise. Furthermore, appellant argues that it is highly unlikely that a five-year-old would be *Page 17 
able to escape from an adult attempting to attack him. The state, on the other hand, argues that K.C.'s testimony is detailed and consistent with his mother's testimony that she and her husband were unable to find K.C. for a short period of time on the day in question, and when he did come home, "he came running up the stairs, huffing and puffing. * * * it was just like he was kind of sweating profusely * * *."
 {¶ 36} There is no difference between circumstantial evidence and direct evidence as far as the function of the fact finder is concerned. See State v. Brooks, Summit App. No. 23236, 2007-Ohio-506. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHaas (1967),10 Ohio St.2d 230, 231.
 {¶ 37} In looking at the trial testimony, we find that the state presented sufficient evidence to identify appellant as the person who kidnapped and attempted to rape K.C. and that K.C.'s testimony is sufficient to prove that the crimes occurred. See State v. Roberts, Hamilton App. No. C-040547, 2005-Ohio-6391 (holding that an eight-year-old "victim's testimony with respect to vaginal penetration was sufficient, as a matter of law, for a jury to reasonably conclude that Roberts had engaged in sexual conduct"; State v. Blankenship (Dec. 13, 2001) Cuyahoga App. No. 77900 (holding that there "is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction"). We also find that the court did not lose its way in convicting appellant of these offenses, and his fifth and sixth assignments of error are overruled. *Page 18 
 VI. {¶ 38} Appellant's seventh and ninth assignments of error will be addressed together and they read as follows: "Appellant's conviction for attempted rape in CR-455180 was not supported by sufficient evidence as required by due process"; and "defendant's conviction for attempted rape in CR-455180 was against the manifest weight of the evidence."
 {¶ 39} Case No. CR-455180 involves the attempted rape of five-month-old J.D. Specifically, appellant argues that if the evidence that he had his erect penis near J.D.'s mouth is to be believed, this would demonstrate an intent to commit gross sexual imposition rather than attempted rape. The standard of review for claimed errors of sufficiency and weight of the evidence, as well as the legal definition of attempted rape, can be found in our analysis of appellant's fifth and sixth assignments of error above. Furthermore, pursuant to R.C.2907.05(A)(4), gross sexual imposition is, for the purpose of the instant case, when a person has sexual contact with someone under 13 years old.
 {¶ 40} To address the particulars of appellant's argument, we must first note the difference between sexual conduct and sexual contact, as defined in R.C. 2907.01(A) and (B) respectively. Sexual conduct means insertion or penetration of "any part of the body * * * into the vaginal or anal opening of another," including intercourse, fellatio and cunnilingus. Sexual contact, on the other hand, means "any touching of an erogenous zone of another * * *." Ohio courts have held that to "sustain *Page 19 
a conviction for attempted rape, `there must be evidence indicating purpose to commit rape instead of some other sex offense, such as gross sexual imposition, R.C. 2907.05, which requires only sexual contact.'"State v. Jones, Cuyahoga App. No. 82978, 2004-Ohio-512 (quotingState v. Davis (1996), 76 Ohio St.3d 107, 114). In Jones, we reversed the defendant's conviction for attempted rape based on the victim's testimony that the defendant told her to take her clothes off.
 {¶ 41} A criminal attempt is an act or omission constituting a substantial step toward committing a crime. State v. Woods (1976),48 Ohio St.2d 127, death penalty vacated (1978), 438 U.S. 910.
 "A `substantial step' involves conduct which is `strongly corroborative of the actor's criminal purpose.' The Ohio Supreme Court, in formulating the standard for identifying conduct which constitutes a substantial step, stated that `intent to commit a crime does not of itself constitute an attempt, nor does mere preparation.' However, the court went on to explain that `those acts which are so dangerously close to resulting in a crime that intervention and arrest by the police are justified,' are punishable as a substantial step in a criminal attempt. The Ohio Supreme Court also noted that such acts need not be the `last proximate act' prior to the consummation of the felony."
State v. Thomas, Butler App. No. 2006-03-041, 2006-Ohio-7029 (internal citations omitted).
 {¶ 42} In the instant case, Davis testified that she found appellant on the couch with J.D. positioned on his lap so that J.D.'s mouth was next to appellant's erect penis, which was sticking out of his shorts. We cannot say that the court erred when it found this to be an overt act that convincingly demonstrated appellant's intent to *Page 20 
engage in fellatio with five-month-old J.D. As such, appellant's seventh and ninth assignments of error are overruled.
 VII. {¶ 43} In appellant's eighth assignment of error, appellant argues that "the trial judge committed error and violated the constitutional prohibition on double jeopardy by convicting Mr. Hardley of both attempted rape and kidnapping in CR-455180 and imposing sentences for both offenses."
 {¶ 44} R.C. 2941.25 prohibits an offender from being convicted of two or more allied offenses of similar import. The two-part test for determining whether crimes are allied offenses is as follows: 1) The elements of the two offenses are compared to see if they correspond to such a degree that the commission of one will result in the commission of the other, the crimes are allied offenses of similar import, and 2) The defendant's conduct is reviewed to determine whether the crimes were committed separately or under a separate animus; if so, the defendant may be convicted of both offenses. State v. Blankenship (1988),38 Ohio St.3d 116.
 {¶ 45} The offenses of rape and kidnapping may be allied offenses of similar import. For example, no separate animus occurs "where the restraint or movement of the victim is merely incidental to a separate underlying crime * * *; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate *Page 21 
convictions." State v. Logan (1979), 60 Ohio St.2d 126 at paragraph (a) of the syllabus.
 {¶ 46} In the instant case, Davis testified that when she left to get breakfast, J.D. was asleep in his crib. However, when she returned approximately ten minutes later, appellant was sitting on the couch with J.D. on his lap. While we note that this restraint was neither necessarily prolonged nor secretive, removing a baby from his or her crib can be a substantial and significant movement designed to facilitate an attempted rape. In other words, appellant could not have held J.D. in his lap near his exposed penis without first removing J.D. from the crib. We hold that this amounts to a separate animus, thus allowing the conviction and sentencing of both kidnapping and attempted rape under R.C. 2941.25(B). Appellant's eighth assignment of error is overruled.
 VIII. {¶ 47} Appellant's tenth and eleventh assignments of error will be addressed together, and they read as follows: "The trial court erred in finding defendant guilty of the sexually violent predator specification in CR-455180 when he had not been previously convicted of a sexually violent offense at the time of his indictment in CR-455180," and "Defendant's sentence of ten years to life for attempted rape and kidnapping in CR-455180 is contrary to law."
 {¶ 48} Pursuant to R.C. 2971.03(A), a sexually violent predator specification enhances the sentence of a defendant "who is convicted of or pleads guilty to a *Page 22 
sexually violent offense and who also is convicted of or pleads guilty to a sexually violent predator specification that was included in the indictment * * *." Furthermore, "R.C. 2971.01(H)(1) requires that only a conviction that existed prior to the indictment of the underlying offense can be used to support the specification." State v. Smith,104 Ohio St.3d 106, 107, 2004-Ohio-6238.
 {¶ 49} In the instant case, appellant was indicted in Case No. CR-455180 on August 6, 2004, and at that time he had no prior convictions for violent sex offenses. Specifically, Case No. CR-425542 had been dismissed because he was found incompetent to stand trial and he had not yet been reindicted in Case No. CR-465074. Despite the restrictions of R.C. 2971.01(H)(1), in Case No. CR-455180, the court sentenced appellant to life imprisonment under R.C. 2971.03(A)(2) for the sexually violent predator specification, in addition to a mandatory ten years in prison for attempted rape. The state concedes, and this court finds, that the court erred in imposing the life tail under the sexually violent predator specification.
 {¶ 50} Although appellant did not raise the issue of his being labeled a sexual predator under R.C. 2950.09, we raise it sua sponte. The court's classifying appellant a sexual predator in Case No. CR-455180 based solely on the sexually violent predator specification amounts to plain error, because appellant did not have an existing conviction to support the specification. The sexual predator classification in Case No. CR-455180 is vacated; however, we find no error with appellant's sexual predator classification in Case No. CR-465074, as the court held a hearing and *Page 23 
complied with the mandates of R.C. 2950.09. Appellant's tenth and eleventh assignments of error are sustained.
 {¶ 51} Appellant's convictions are affirmed, his sentence is vacated, and this case is remanded for resentencing and for a new R.C. 2950.09
sexual predator classification hearing in Case No. CR-445180.
It is ordered that appellee and appellant share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing and a new sexual predator classification hearing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 KENNETH A. ROCCO, J., and MARY J. BOYLE, J., CONCUR *Page 1