[Cite as *State v. McHargue*, 2024-Ohio-924.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

STATE OF OHIO,                          :
                                        :
    Plaintiff-Appellee,                 :       Case No. 22CA12
                                        :
v.                                      :
                                        :       <u>DECISION AND</u>
CAROLYN ANN MCHARGUE,                   :       <u>JUDGMENT ENTRY</u>
                                        :
    Defendant-Appellant.                :       **RELEASED 3/8/2024**
_____

APPEARANCES:

Christopher Pagan, Repper-Pagan Law, Ltd., Middletown, Ohio, for Appellant.

Jason Holdren, Gallia County Prosecuting Attorney, and Jeremy Fisher, Assistant Gallia County Prosecuting Attorney, Gallipolis, Ohio, for Appellee.
_____

Smith, P.J.

{¶1} Carolyn McHargue, Appellant, appeals from the judgment of the Gallia County Court of Common Pleas convicting her of one count of endangering children resulting in serious physical harm, a second-degree felony in violation of R.C. 2919.22(B)(1) and (E)(2)(d). On appeal, McHargue contends: 1) that the trial court erred by failing to adjudicate competency; 2) that the trial court imposed an unlawful sentence; and 3) that it is unlawful to deny her appellate counsel a copy of her presentence investigation report to investigate, research, and present issues for appeal. However, because we have found no merit to the assignments of

error raised by McHargue, they are overruled.  Accordingly, the judgment of the trial court is affirmed.

## FACTS

{¶2}  On November 10, 2021, McHargue was indicted on three felony counts of endangering children.  Count one charged McHargue with endangering children in violation of R.C. 2919.22(A) and 2919.22(E)(2)(c), a felony of the third degree.  Count two charged McHargue with endangering children in violation of R.C. 2919.22(B)(1) and 2919.22(E)(2)(d), a felony of the second degree.  Count three charged McHargue with endangering children in violation of R.C. 2919.22(B)(2) and 2919.22(E)(3), also a felony of the second degree.  Because McHargue had a history of mental illness and had been recently hospitalized, defense counsel moved for a competency evaluation, which the trial court ordered.  When the matter came on for the scheduled competency hearing, defense counsel stipulated to the report, waived the competency hearing, and asked that the matter proceed.  The trial court thereafter issued an order with a new pre-trial date and jury trial date.  The competency report was not made part of the record.

{¶3}  Prior to the scheduled jury trial, McHargue entered into plea negotiations with the State whereby she would plead guilty to one second-degree-felony endangering children in violation of R.C. 2919.22(B)(1) and (E)(2)(d) and she would also pay costs, in exchange for the dismissal of the remaining counts.

At the change of plea hearing, the trial court inquired as to McHargue's competency to enter a plea and engaged in an on-the-record colloquy with both McHargue and her counsel before accepting her guilty plea. The trial court further ordered that a pre-sentence investigation be performed and ultimately sentenced McHargue to a seven to ten and one-half year term of imprisonment under the Reagan Tokes Law. The trial court further imposed a mandatory term of post-release control and ordered that McHargue pay court costs as well as costs of confinement and supervision.

{¶4} McHargue now brings her timely appeal, setting forth three assignments of error for our review. She notes that her appellate counsel was denied a copy of the pre-sentence investigation report to review for purposes of her appeal.

## ASSIGNMENTS OF ERROR

I.     THE TRIAL COURT ERRED BY FAILING TO ADJUDICATE COMPETENCY.

II.    THE TRIAL COURT IMPOSED AN UNLAWFUL SENTENCE.

III.   IT IS UNLAWFUL TO DENY APPELLANT [SIC] COUNSEL A COPY OF MCHARGUE'S PSI TO INVESTIGATE, RESEARCH, AND PRESENT ISSUES FOR APPEAL.

ASSIGNMENT OF ERROR I

{¶5} In her first assignment of error, McHargue contends that the trial court erred by failing to adjudicate competency. More specifically, McHargue argues that the trial court's failure to determine competency violated R.C. 2945.38(A), left the competency determination outstanding, and prevented a reliable determination of her ability to enter a knowing, intelligent, and voluntary plea. The State responds by arguing that McHargue was competent and that the trial court acknowledged a stipulation of competency. The State further argues that although there was "no specific finding of competency in the entry, it was not error and should not cause a reversal of the conviction."

Competency

{¶6} "Due process requires a criminal defendant be competent to stand trial." *State v. Smith*, 4th Dist. Pickaway No. 19CA33, 2021-Ohio-2866, ¶ 14 (hereinafter "*Smith I*"); *State v. Lechner*, 4th Dist. Highland No. 19CA3, 2019-Ohio-4071, ¶ 25; *State v. Berry*, 72 Ohio St.3d 354, 359, 1995-Ohio-310, 650 N.E.2d 433.[1] The United States Supreme Court has observed that:

> It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.

---

[1] There are three *Smith* cases cited in this opinion, none of which are related, but which have been labeled numerically to eliminate confusion.

*Drope v. Missouri*, 95 S.Ct. 896, 420 U.S. 162, 171 (1975).  Thus, the

"[c]onviction of an accused while he or she is legally incompetent is a violation of

due process."  *State v. Merryman*, 4th Dist. Athens No. 12CA28, 2013-Ohio-4810,

¶ 14.

{¶7}  " 'The United States Supreme Court established the test for

competency and requires the court to determine if an accused "has sufficient

present ability to consult with his lawyer with a reasonable degree of rational

understanding—and whether he has a rational as well as factual understanding of

the proceedings against him." ' "  *Smith I*, at ¶ 15, quoting *Lechner, supra*, at ¶ 26,

in turn quoting *Dusky v. United States*, 80 S.Ct. 788, 789, 362 U.S. 402 (1960).

Ohio has codified the competency test in R.C. 2945.37(G) as follows:

> A defendant is presumed to be competent to stand trial.  If,
> after a hearing, the court finds by a preponderance of the
> evidence that, because of the defendant's present mental
> condition, the defendant is incapable of understanding the nature
> and objective of the proceedings against the defendant or of
> assisting in the defendant's defense, the court shall find the
> defendant incompetent to stand trial and shall enter an order
> authorized by section 2945.38 of the Revised Code.

Under this subjective test, if a defendant is capable of understanding the nature and

objective of the proceedings and assisting in the defense, then the defendant is

competent to stand trial.  *Smith I, supra*, at ¶ 16.  A defendant with mental illness

or intellectual deficiencies may still be competent to stand trial.  *See Lechner*, at ¶

27.

{¶8}  As explained in *Lechner*:

> "Incompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel."

*Id.,* quoting *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986).

Of relevance herein, we note that "the competency standard for entering a plea 'is the same as the competency standard for standing trial.' "  *State v. Morrison*, 4th Dist. Adams No. 07CA854, 2008-Ohio-4913, at ¶ 11, quoting *Godinez v. Moran*, 509 U.S. 389, 391, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993); *State v. Mink*, 101 Ohio St.3d 350, 2004-Ohio-1580, 805 N.E.2d 1064, ¶ 57; *State v. Bolin*, 128 Ohio App.3d 58, 713 N.E.2d 1092 (8th Dist. 1998); *State v. Jenkins*, 3d. Dist. Henry No. 07-05-06, 2005-Ohio-5616, ¶ 8.

Legal Analysis

{¶9}  The Supreme Court of Ohio has determined that competency to stand trial is presumed and the defendant bears the burden of proving his or her incompetency by a preponderance of the evidence.  *See State v. Roberts*, 137 Ohio St.3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, ¶ 89, citing R.C. 2945.37(G).  *See also State v. Smith*, 8th Dist. Cuyahoga No. 108793, 2020-Ohio-3666, ¶ 11 (hereinafter "*Smith II*") and *State v. Ingram*, 8th Dist. Cuyahoga Nos. 107587 and 107588, 2019-Ohio-2438, ¶ 6.  However, once the issue of a defendant's

competency is raised, the court is required to hold a competency hearing. *See State v. Were*, 94 Ohio St.3d 173, 2002-Ohio-481, 761 N.E.2d 591, paragraph one of the syllabus; R.C. 2945.37(B). Following the hearing, "if the court * * * finds that the defendant is competent to stand trial, the defendant shall be proceeded against as provided by law." R.C. 2945.38(A).

{¶10} As explained in *Smith II, supra*, at ¶ 12:

> Either party may submit evidence on the issue of the defendant's competency, and a "written report of the evaluation of the defendant may be admitted into evidence at the hearing by stipulation[.] * * *" R.C. 2945.37(E). A stipulation is " '[a] voluntary agreement between opposing counsel concerning the disposition of some relevant matter so that evidence on the matter does not have to be introduced at the trial.' " *State v. Hardley*, 8th Dist. Cuyahoga Nos. 88456 and 88457, 2007-Ohio-3530, ¶ 18, quoting West's Legal Thesaurus/Dictionary 716-717 (1985). Where a defendant stipulates to competency, "a trial court need not hold a hearing pursuant to R.C. 2945.37(B) because a hearing is only needed to introduce evidence rebutting the presumption of competency established in R.C. 2945.37(G)." *State v. Dienes*, 8th Dist. Cuyahoga No. 97578, 2012-Ohio-4588, ¶ 9, citing *State v. Smith*, 8th Dist. Cuyahoga No. 95505, 2011-Ohio-2400, ¶ 6 [hereinafter "*Smith III*"]. And the statute does not require the court to make specific findings on the record regarding a defendant's competency, "above and beyond the report itself." *Dienes* at ¶ 10.

{¶11} As set forth above, McHargue's counsel raised the issue of competency in light of her "history of mental health issues and recent hospitalizations," which apparently included a diagnosis of "post traumatic stress syndrome." As a result, the trial court promptly issued an order directing that

McHargue undergo an evaluation to determine her competency to stand trial. After

delaying the competency hearing several times due to delays on the part of the

evaluator, the matter came on for the scheduled competency hearing on April 4,

2022. The hearing transcript, which is short, reveals that defense counsel simply

informed the court that the competency evaluation had been received and that the

defendant was stipulating to the competency evaluation. The following exchange

occurred:

> Court:              Mr. Hedges is here on her behalf. Mr. Fisher
>                     is here on behalf of the State. Um, there's
>                     been, we do have, this is a motion regarding
>                     the competency report as well as the status.
>                     Um, Mr. Fisher or Mr. Hedges where are we
>                     on this?
>
> Mr. Hedges:         Uh, Your Honor, we're going to stipulate to
>                     the uh, to the uh, competency evaluation and
>                     then uh, basically we're going to leave the
>                     schedule as it is.[2]

The same day as the hearing, the trial court issued a journal entry stating that "[t]he

Defendant, through counsel, waived the hearing on competency and stipulated that

the findings in the report are accurate." The journal entry further granted a

continuance requested by the defense, vacated the scheduled May 9, 2022 jury

---

[2] At that time, the matter was scheduled for a final pre-trial hearing on April 25, 2022 and a jury trial on May 9, 2022.

trial, and continued the trial to June 29, 2022. Thereafter, McHargue decided to plead guilty.

{¶12} McHargue essentially argues on appeal that because the trial court did not journalize an entry finding her to be competent to stand trial that the issue of her competency was never determined. She cites *State v. Whitling*, 2018-Ohio-1360, 110 N.E.3d 63 (12th Dist.) in support of her argument that "there had to be a journalized determination of competency before her plea and sentencing." Much like the present case, *Whitling* involved a situation where a competency evaluation was performed but was not made part of the record. *Id.* at ¶ 14. *Whitling* also involved a situation where the matter came on for the scheduled competency hearing, but in light of the contents of the report, the defense made no argument, offered no evidence, and simply requested a pretrial hearing. *Id.* at ¶ 4. Admittedly, these facts in *Whitling* are similar to the facts presently before us. The *Whitling* court ultimately found fault with the trial court's failure to issue an entry finding Whitling competent to stand trial. *Id.* at ¶ 17. In reaching its decision, the court reasoned as follows:

> At the conclusion of the September 7, 2016 hearing, the trial court was left with the unrebutted presumption that appellant was competent to stand trial. See R.C. 2945.37(G). Utilizing this statutory presumption, the trial court was required to make a determination of appellant's competency to stand trial. See R.C. 2945.38(A).

Once the issue of competency has been raised, the procedures set forth in R.C. 2945.37 and 2945.38 are required to be followed so that the question of appellant's competence to stand trial may be put to rest. Until the trial court resolves this issue by putting on an entry, there remains an issue as to whether appellant is competent to stand trial. Therefore, for the reasons stated above, we find that the trial court erred in accepting appellant's guilty plea without first determining defendant's competency in accordance with R.C. 2945.38(A). Appellant's first assignment of error is sustained.

*Whitling* at ¶ 21-22.

{¶13} However, contrary to the reasoning in *Whitling*, the competency statute does not require that the trial court put on an entry in order to resolve the issue of competency prior to accepting a plea. The Eighth District Court of Appeals recently acknowledged this in *Smith II*, *supra*. The facts in *Smith II* are more similar to the facts before us than are the facts in *Whitling*. For instance, Smith was referred for a competency evaluation upon the request of the defense. *Id.* at ¶ 2. The parties thereafter "waived the hearing and stipulated to the court psychiatric clinic report." *Id.* at ¶ 3. Like the situation sub judice, the competency report was not made part of the record; however, in *Smith II* the prosecution did mention at the hearing that the report found Smith competent to stand trial. *Id.* at ¶ 4. No such express statement was made in the present case. In *Smith II*, the subsequent journal entry filed by the trial court simply stated that "both parties stipulate to psych findings[]" and did not include any finding by the trial court regarding Smith's competency. *Id.* at ¶ 5.

{¶14} On appeal, Smith argued that the trial court had never actually found him competent after he was referred for a psychiatric evaluation. *Id.* at ¶ 9. However, the trial court determined that defense counsel had raised the issue of competency, that Smith had been evaluated (despite the fact that a copy of the report was not part of the record), that defense counsel had reviewed the report, and that the parties had "stipulated to the psychiatrist's finding of Smith's competency." *Id.* at ¶ 13. Importantly, as set forth above, the court found that "the statute does not require the court to make specific findings on the record regarding a defendant's competency 'above and beyond the report itself.' " *Id.* at ¶ 12, quoting *State v. Dienes*, *supra*, at ¶ 9. In *State v. Dienes*, the court stated that " '[a] hearing is not required in all situations, only those where the competency issue is raised and maintained.' " *Dienes* at ¶ 9, quoting *Smith III, supra,* at ¶ 5. *See also State v. Jones*, 4th Dist. Gallia No. 19CA9, 2020-Ohio-7037, ¶ 27. The *Dienes* court observed that it had previously held in *Smith III* that "where a defendant stipulates to competency, a trial court need not hold a hearing pursuant to R.C. 2945.37(B) because a hearing is only needed to introduce evidence rebutting the presumption of competency established in R.C. 2945.37(G)." *Dienes* at ¶ 9, citing *Smith III* at ¶ 6.

{¶15} We hold that here, although neither the defense, prosecution, or court expressly stated that the competency evaluation resulted in a finding that

McHargue was competent to stand trial, it is obvious from the exchange on the record as well as the subsequent journal entry that everyone understood McHargue to be competent. The defense stipulated to the findings in the report and essentially requested that the matter proceed to trial. A journal entry was filed the same day setting a jury trial date. We reject *Whitling's* non-binding authority stating that "[u]ntil the trial court resolves this issue by putting on an entry, there remains an issue as to whether appellant is competent to stand trial." *Whitling* at ¶ 22. We instead find persuasive the reasoning of the Eighth District Court of Appeals which determined that "the statute does not require the court to make specific findings on the record regarding a defendant's competency, 'above and beyond the report itself.' " *Smith II* at ¶ 12, quoting *Dienes* at ¶ 10.

{¶16} The record before us indicates that both parties and the court had reviewed a copy of the competency report, that the defense stipulated to the contents of the report, and based upon the contents, waived the scheduled competency hearing and requested that the matter proceed to trial. Further, and of importance, when McHargue decided to enter a guilty plea, the trial court inquired as to her competency before accepting her plea. The following exchange occurred on the record:

> Court:                    Okay. Today are you under the influence of
>                           any medications, drugs or alcohol?
>
> Ms. McHargue:    No.

Court:              All right.  Um, Mr. Hedges, you've spoken with, wit, excuse me, with Ms. McHargue today do you have any reason to believe she's under the influence?

Mr. Hedges:         I do not believe she is, Your Honor.

Court:              Any concerns about her competency?

Mr. Hedges:         No.

Court:              All right.  Um, and um, Ms. McHargue, do you have any mental illness or condition that would interfere with your understanding of what we're doing here today?

Ms. McHargue:       No.

Court:              Okay.  I believe that we had at one point um, had a competency um, issue raised and we um, had an evaluation?

Ms. McHargue:       Yes.

Court:              Okay. Um . . .

Ms. McHargue:       I have, I have mental illness but not . . .

Court:              Okay.  But it's not going to interfere today?

Ms. McHargue:       Right.

Court:              Okay.  And we addressed that also on the record when we got the report back, so I appreciate um, the information you've provided me there Ms. McHargue.  Um, Mr. Holdren or Mr. Hedges is there anything else you want to add on that issue today?

Mr. Holdren:          No, Your Honor.

Court:                Okay.

Mr. Hedges:           No, Your Honor.

Furthermore, although it took place contemporaneously with the acceptance of

McHargue's guilty plea rather than prior to, defense counsel represented in writing

that his client was competent to proceed with her change of plea and counsel was a

signatory to the written plea agreement.

{¶17} Thus, collectively, the competency statutes at issue and relevant

caselaw provide that if the issue of a defendant's competency is raised, the trial

court must set the matter for hearing. However, a defendant may stipulate to the

contents of the competency report and may also waive the competency hearing, or

at least may elect not to introduce evidence. In such a situation, the presumption of

competency remains unrebutted. Further, although a competency report may be

made part of the record, there is no requirement that it must be made part of the

record. Additionally, although the trial court must ensure a defendant is competent

before accepting a plea, the competency statutes do not mandate the type or

manner of findings the trial court must make and they do not expressly require that

the trial court issue a journal entry finding a defendant competent.

{¶18} We conclude that here, although defense counsel raised the issue of

competency, once the competency report was received, counsel did not maintain

the claim that McHargue was incompetent.  Instead, the defense stipulated to the contents of the competency report and requested that the matter proceed to trial. Based upon the facts before us, we reject McHargue's argument that the trial court failed to determine her competency.  We further reject her argument that the trial court erred in failing to issue a journal entry specifically finding her competent.  As set forth above, a defendant is presumed competent to stand trial.  The defense's stipulation to the contents of the report and waiver of a competency hearing failed to rebut the presumption of competency and thus, that presumption remained intact.  We further conclude that the trial court's colloquy on the record with McHargue and her counsel prior to accepting her guilty plea resolved any arguable question that may have remained regarding her prior incompetency claim.

{¶19}  As a result, finding no merit to the arguments raised under McHargue's first assignment of error, the assignment of error is overruled.

## ASSIGNMENT OF ERROR II

{¶20}  In her second assignment of error, McHargue contends that the trial court imposed an unlawful sentence.  McHargue raises two arguments under this assignment of error.  First, she argues that the trial court erred by imposing supervision costs because they are limited to community-control supervision and she received a prison sanction followed by post-release control.  Second, she argues that the Reagan Tokes sentence that was imposed was unconstitutional.

The State does not contest the issue of supervision costs being improperly imposed and simply acknowledges McHargue's argument about the Reagan Tokes Law.

Reagan Tokes Law

{¶21}  The Reagan Tokes Law encompasses four newly-enacted statutes and amendments to 50 statutes.  R.C. 2901.011.  The law requires that a court imposing a prison term under R.C. 2929.14(A)(1)(a) or (2)(a) for a first or second-degree felony committed on or after March 22, 2019, impose a minimum prison term under that provision and a maximum prison term determined under R.C. 2929.144(B).  R.C. 2929.144(A) and (C).  There is a presumption that the offender "shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier."  R.C. 2967.271(B).  A "presumptive earned early release date" is a date determined under procedures described in R.C. 2967.271(F) which allows the sentencing court to reduce the minimum prison term under certain circumstances.  R.C. 2967.271(A)(2).

{¶22}  R.C. 2967.271(C) states that the department of rehabilitation and correction (hereinafter "DRC") may rebut the presumption in R.C. 2967.271(B) if it determines, at a hearing, that one or more of the following applies:

> (1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:

(a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

If DRC rebuts the presumption, it "may maintain the offender's incarceration" after the expiration of the minimum prison term or presumptive earned early release date for a reasonable period, determined and specified by DRC, which "shall not exceed the offender's maximum prison term."  R.C. 2967.271(D)(1).

Standard of Review

{¶23}  "When reviewing felony sentences appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2)." *State v. Johnson*, 4th Dist. Adams No. 19CA1082, 2019-Ohio-3479, ¶ 7, citing *State v. Marcum*, 146 Ohio

St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 7.  R.C. 2953.08(G)(2) states as

follows:

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing.  The appellate court's standard for review is not whether the sentencing court abused its discretion.  The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶24}  "Clear and convincing evidence is 'that measure or degree of proof

which * * * will produce in the mind of the trier of facts a firm belief or conviction

as to the facts sought to be established.' " *State ex rel. Husted v. Brunner*, 123

Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 18, quoting *Cross v.*

*Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

This Court has explained as follows regarding the review of felony sentences:

> " '[R.C. 2953.08(G)(2)] does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings. In other words, the restriction is on the appellate court, not the trial judge. This is an extremely deferential standard of review.' "

*State v. Spangler*, 4th Dist. Athens No. 21CA17, 2023-Ohio-2003, ¶ 17, quoting

*State v. Pierce*, 4th Dist. Pickaway No. 18CA4, 2018-Ohio-4458, ¶ 8, in turn

quoting *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, 992

N.E.2d 453, ¶ 20-21.

{¶25} The constitutionality of a statute presents a question of law we

review de novo. *Hayslip v. Hanshaw*, 2016-Ohio-3339, 54 N.E.3d 1272, ¶ 27 (4th

Dist.). " '[L]aws are entitled to a strong presumption of constitutionality.' " *Ohio*

*Renal Assn. v. Kidney Dialysis Patient Protection Amendment Commt.*, 154 Ohio

St.3d 86, 2018-Ohio-3220, 111 N.E.3d 1139, ¶ 26, quoting *Yajnik v. Akron Dept.*

*of Health, Hous. Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 16.

"A party may challenge a statute as unconstitutional on its face or as applied to a

particular set of facts." *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334,

836 N.E.2d 1165, ¶ 37. McHargue asserts a facial challenge to the Reagan Tokes

Law and therefore "must prove beyond a reasonable doubt 'that no set of

circumstances exists under which the act would be valid.' " *Ohio Renal Assn.* at ¶

26, quoting *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970

N.E.2d 898, ¶ 21.

{¶26} " '[T]he question of the constitutionality of a statute must generally

be raised at the first opportunity and, in a criminal prosecution, this means in the

trial court.' " *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19

N.E.3d 900, ¶ 15, quoting *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986).  A reviewing court does have "discretion to consider a forfeited constitutional challenge to a statute" and "may review the trial court decision for plain error, but we require a showing that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice."  (Citation omitted.) *Quarterman* at ¶ 16.  "The burden of demonstrating plain error is on the party asserting it." *Id.*  The Supreme Court of Ohio has stated that "a forfeited constitutional challenge to a statute is subject to review 'where the rights and interests involved may warrant it.' " *Id.*, quoting *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus.

Legal Analysis

{¶27}  For ease of analysis, we address McHargue's sentencing arguments out of order.  As set forth above, McHargue contends that the trial court imposed an unconstitutional Reagan Tokes sentence.  She raises three sub-arguments as follows:  1) "Reagan Tokes violates the *Apprendi-Alleyne* doctrine because the facts for increased prison, beyond the presumptive minimum, are not determined by a jury upon proof beyond a reasonable doubt";  2) Reagan Tokes violates "separation of powers because ODRC employees, in the executive branch, decide a violation and impose the increased punishment—invading the judicial function";

and, 3) Reagan Tokes violates procedural due process because it "fails to provide notice about potential violations and fails to provide meaningful procedures for fair hearings." McHargue acknowledges that these very questions have been pending before the Supreme Court of Ohio and requests that this Court "apply the Ohio Supreme Court's Reagan Tokes holding to her Reagan Tokes sentence."

{¶28} We initially note, sua sponte, that McHargue did not challenge the constitutionality of the Reagan Tokes Law at the trial level. Moreover, McHargue did not argue plain error on appeal, and we decline to construct a plain error argument on her behalf. *State v. Conant*, 4th Dist. Adams No. 20CA1108, 2020-Ohio-4319, ¶ 40 (declining to construct plain error argument for appellant challenging Reagan Tokes Law). Nevertheless, we conclude that even if McHargue had argued plain error, her argument would fail.

{¶29} After briefing was concluded in this matter, the Supreme Court of Ohio issued its decision determining the constitutionality of the Reagan Tokes Law. *State v. Hacker*, 2023-Ohio-2535, -- N.E.3d --. In *Hacker*, the Court upheld the constitutionality of the Reagan Tokes Law, specifically finding that the law does not violate the right to a trial by jury, does not violate the separation-of-powers doctrine, and does not violate procedural due process on its face. *Hacker* at ¶ 25, 28 and 40. *See also State v. Nesbitt*, 4th Dist. Ross No. 23CA14, 2023-Ohio-3434, ¶ 53-55. Thus, in light of the holding in *Hacker*, McHargue's

constitutionality arguments are without merit.  Further, because the arguments

presented by McHargue "do not present novel issues or any new theory

challenging the constitutional validity of any aspect of the Reagan Tokes Law left

unaddressed by the Ohio Supreme Court's decision in *Hacker*," this portion of her

second assignment of error is overruled.  *State v. Spencer*, 8th Dist. Cuyahoga No.

112058, 2023-Ohio-3359, ¶ 28.

{¶30}  McHargue next contends that the trial court erred by imposing

supervision costs.  She argues that supervision costs are limited to community-

control supervision and that she received a prison sanction followed by post-

release control.  Although the State concedes this argument and although this

appears to be a question of first impression in this district, there is a recent line of

cases from the Twelfth District Court of Appeals that addresses this specific

question.  More specifically, the cases hold that supervision costs are not limited to

costs related to community control and that trial courts may impose supervision

costs for costs associated with post-release control.  *See State v. Patterson*, 12th

Dist. Butler No. CA2021-01-004, 2021-Ohio-3959, ¶ 15 ("Upon review, we agree

that supervision costs are authorized in conjunction with postrelease control");

*State v. Murphy*, 12th Dist. Butler No. CA2021-05-048, 2021-Ohio-4541, ¶ 44

("For the reasons expressed in *Patterson*, we find that the trial court did not err in

imposing supervision costs."); *State v. Ross*, 12th Dist. Butler No. CA2022-1-110,

2023-Ohio-1421, ¶ 12 (relying on the doctrine of stare decisis to again reject the argument that supervision costs associated with post-release control are not authorized by R.C. 2929.18(A)(5)(a)).

{¶31} In *Patterson*, the court reasoned as follows in response to the identical argument raised herein:

> Under R.C. 2929.18(A), the court imposing sentence upon a felony offender may sentence the offender to "any financial sanction or combination of financial sanctions authorized under this section * * *." Included among those authorized financial sanctions is "any or all of the costs of sanctions incurred by the government." (Emphasis added.) R.C. 2929.18(A)(5)(a). The statute goes on to list some examples of such sanctions, including the costs of implementing any community control sanction, including a supervision fee, the costs of confinement, and the costs related to an immobilizing device. R.C. 2929.18(A)(5)(a)(i),(ii), and (iii). However, as stated, these are examples. The language in the statute does not preclude a court from imposing other costs of sanctions incurred by the government. Supervision fees related to postrelease control are within the ambit of "any or all of the costs of sanctions incurred by the government." R.C. 2929.18(A). Accordingly, we conclude that the court did not err in imposing supervision costs.

*Patterson* at ¶ 15.

{¶32} In her brief, McHargue acknowledges the *Patterson* court's determination that post-release control supervision costs could be supported under R.C. 2929.18(A)(5)(a), but she argues "that provision cannot override the legislature's more specific articulation of supervision costs under R.C. 2949.111(A)." We find no merit to McHargue's argument. R.C. 2949.111

governs "[p]riority of assignment of payments to satisfaction of costs, restitution, fines, and probation fees." R.C. 2949.111(A)(4) defines "supervision fees," "as used in this section[,]" to mean "any fees that a court pursuant to sections 2929.18, 2929.28, and 2951.021 of the Revised Code * * * requires an offender who is under a community control sanction to pay for supervision services." Thus, McHargue argues that the definition of "supervision fees" "thereby excludes PRC supervision costs." However, section (A)(3) of R.C. 2949.111, which defines "reimbursement" for purposes of that code section, states that courts may order "reimbursement" of supervision fees, "or any other costs that the court orders an offender to pay."

{¶33} Likewise, R.C. 2929.18(A) states that "the court imposing a sentence upon an offender for a felony may sentence the offender to *any* financial sanction * * * authorized under this section[.]" (Emphasis added). R.C. 2929.18(A) further provides as follows:

> Financial sanctions that either are required to be or may be imposed pursuant to this section include, *but are not limited to*, the following:
>
> * * *
>
> (5)(a) Reimbursement by the offender of any or all of the costs incurred by the government, including the following:
> (Emphasis added).

Section (5)(a) goes on to list costs of implementing community control, costs of confinement, and costs of purchasing certified ignition interlock devices. As set forth above, the statute clearly states that the authorized financial sanctions are not limited to the examples expressly set forth in the statute.

{¶34} Moreover, R.C. 2967.01(N) defines "[p]ost-release control" as "a period of supervision by the adult parole authority after a prisoner's release from imprisonment, other than a term of life imprisonment, that includes one or more *post-release control sanctions* imposed under section 2967.28 of the Revised Code." (Emphasis added). R.C. 2967.01(O) defines "post-release control sanction" as "a sanction that is authorized under sections 2929.16 to 2929.18 of the Revised Code and that is imposed upon a prisoner upon the prisoner's release from a prison term other than a term of life imprisonment." Thus, the post-release control statute expressly contemplates a financial sanction being imposed under R.C. 2929.18 and although R.C. 2929.18(A)(5)(a)(i) expressly discusses supervision fees related to the costs of implementing community control, that is just one example of a financial sanction listed in the statute that is included in a non-exhaustive list. Again, as set forth above, R.C. 2929.18(A) provides that the financial sanctions permitted "are not limited to" the examples included in section (A)(1)-(5).

{¶35} In light of the foregoing reasoning and consistent with the Twelfth District Court of Appeals' holdings on this issue, and despite the State's concession on this issue, we conclude that the trial court did not err by imposing supervision costs associated with post-release control. Accordingly, because we find no merit to either of the arguments raised under McHargue's second assignment of error, it is overruled.

ASSIGNMENT OF ERROR III

{¶36} In her third assignment of error, McHargue contends that it is unlawful to deny her appellate counsel a copy of her presentence investigation report (hereinafter "PSI") to investigate, research, and present issues for appeal. She argues that her appellate counsel was entitled to obtain a copy of the PSI for purposes of appeal under both R.C. 2951.03(D)(1) and R.C. 2953.08 and that Gallia County's policy allowing her to view the PSI in person, but denying her a copy of the PSI, is contrary to law. She alternatively argues that if this Court rejects her statutory claims that her appellate counsel is entitled to a copy of the PSI, that the denial of her request for a copy of the PSI is unconstitutional under the Ohio Equal Protection clause in that it creates a classification between defense counsel and the trial court, probation officers, Ohio Department of Rehabilitations and Corrections staff, law enforcement, and treatment providers, who are all

entitled to copies of the PSI under R.C. 2951.03(A)(2)-(3). She argues that such a classification is "over-inclusive, irrational, and thereby unconstitutional."

{¶37} The State responds by arguing that although defense counsel and appellate counsel are entitled to review the PSI prior to sentencing and for purposes of appeal, McHargue's argument that her appellate counsel is entitled to a copy of the PSI is not supported by the law. The State further directs our attention to the fact that appellate counsel here was not denied access to the PSI and it also references the fact that Gallia County's practices and procedures governing counsel's access to the PSI were consistent with "state-wide practices and the Ohio Revised Code." The State further argues there was no constitutional error in Gallia County's handling of the matter.

Legal Analysis

{¶38} McHargue asserts that in order to inspect the PSI in person in Gallia County, her counsel would have had to travel two and one-half hours each way, resulting in a five hour round trip. She further asserts that Gallia County limits appellate representation by appointed counsel to a total of 20 hours and that making the trip to view the PSI in person would have taken up one-fourth of the time allotted for her case. As a result, it appears that counsel elected not to devote the time needed for travel and instead decided to forego review of the PSI when the request for a copy was denied.

{¶39} PSIs are addressed in both Crim.R. 32.2 and R.C. 2951.03. Crim.R. 32.2 provides as follows:

> Unless the defendant and the prosecutor in the case agree to waive the presentence investigation report, the court shall, in felony cases, order a presentence investigation and report before imposing community control sanctions or granting probation. The court may order a presentence investigation report notwithstanding the agreement to waive the report. In misdemeanor cases the court may order a presentence investigation before granting probation.

Likewise, R.C. 2951.03(A)(1) provides, in pertinent part, that "no person who has been convicted of or pleaded guilty to a felony shall be placed under a community control sanction until a written presentence investigation report has been considered by the court."

{¶40} R.C. 2951.03 permits access to these reports only in certain circumstances. For example, R.C. 2951.03(B)(1) states that "the court, at a reasonable time before imposing sentence, shall permit the defendant or the defendant's counsel to read the report." R.C. 2951.03 further provides in section (B)(2) as follows:

> Prior to sentencing, the court shall permit the defendant and the defendant's counsel to comment on the presentence investigation report and, in its discretion, may permit the defendant and the defendant's counsel to introduce testimony or other information that relates to any alleged factual inaccuracy contained in the report.

{¶41} R.C. 2951.03(D)(1) addresses when a defendant and/or her counsel may seek access to the PSI, the contents of which is "confidential information" and "not a public record." For example, R.C. 2951.03(D)(1) states as follows:

> The court, an appellate court, authorized probation officers, investigators, and court personnel, the defendant, the defendant's counsel, the prosecutor who is handling the prosecution of the case against the defendant, and authorized personnel of an institution to which the defendant is committed may inspect, receive copies of, retain copies of, and use a presentence investigation report or a written or oral summary of a presentence investigation only for the purposes of or only as authorized by Criminal Rule 32.2 or this section, division (F)(1) of section 2953.08, section 2947.06, or another section of the Revised Code.

However, R.C. 2951.03(D)(2) further provides as follows:

> Immediately following the imposition of sentence upon the defendant, the defendant or the defendant's counsel and the prosecutor shall return to the court all copies of a presentence investigation report and of any written summary of a presentence investigation report or part of a presentence investigation report that the court made available to the defendant or the defendant's counsel and to the prosecutor pursuant to this section.

{¶42} In 2014, the Supreme Court of Ohio agreed to address a certified conflict on the question of " '[w]hether, pursuant to R.C. 2951.03, newly-appointed appellate counsel is entitled to obtain a copy of the defendant's presentence investigation report.' " *State v. Johnson*, 138 Ohio St.3d 282, 2014-

Ohio-770, 6 N.E.3d 38, ¶ 1 (hereinafter "*Johnson*"), quoting *State v. Johnson*, 135

Ohio St.3d 1411, 2013-Ohio-1622, 986 N.E.2d 28.[3]

{¶43} In accepting the case, the Court stated that "the issue is whether

appellate counsel who was not trial counsel may obtain a copy of the presentence

investigation report for purposes of representing Johnson on appeal." *Johnson* at ¶

7. The Court first determined that the term " 'defendant's counsel' as used in R.C.

2951.03(D)(1) [encompassed] both a defendant's trial counsel and a defendant's

appellate counsel." *Johnson* at ¶ 2. The Court ultimately answered the certified

question in the affirmative, but only ordered on remand that the defendant's

appellate counsel be provided "access to the report subject to similar restrictions as

contained in R.C. 2951.03 and 2953.08(F)(1) and any further directives of the

appellate court." *Id.* at ¶ 2, 15. The Court's full holding stated as follows:

> Because of concerns for due process and the right to effective
> assistance of counsel on an appeal, and because the term
> "defendant's counsel" as used in R.C. 2951.03(D)(1) includes
> both a defendant's trial counsel and a defendant's appellate
> counsel, we answer the certified question in the affirmative and
> permit newly appointed appellate counsel to have access to a
> presentence investigation report upon a proper showing therefor,
> subject to similar restrictions as contained in R.C. 2951.03 and
> 2953.08(F)(1) and any further directives of the appellate court.

*Id.* at ¶ 14.

---

[3] The Twelfth District certified the conflict between *State v. Johnson*, 12th Dist. Butler No. CA2011-11-212, 2014-Ohio-3776 and *State v. Jordan*, 4th Dist. Scioto No. 03CA2878, 2004-Ohio-2111.

{¶44} Relying on *Johnson*, this Court recently determined in *State v. Jackson*, 4th Dist. Gallia No. 22CA8, 2023-Ohio-3895, that "[u]nder the relevant statutes and *Johnson*, access to the PSI is very limited." *Jackson* at ¶ 45. We further determined that "*Johnson* permits appellate counsel to have access to a defendant's PSI, but does not permit unlimited access[]" and that "[t]his court may not enlarge the *Johnson* holding." *Id.* We ultimately held in *Jackson* "that R.C. 2951.03 does not permit appellant to retain a copy of the presentence investigation report." *Id.*

{¶45} Jackson was represented on appeal by the same counsel who represents McHargue on appeal. Further, the arguments regarding appellate counsel's access to the PSI report in *Jackson* are identical to the arguments raised sub judice and both cases originate from Gallia County. Thus, both involve the same court's practices and policies with respect to appellate counsel's access to the PSI report. As this Court expressed in *Jackson*, "we certainly understand and appreciate appellate counsel's frustration," but "as an intermediate appellate court we are obligated to follow Supreme Court of Ohio decisions." *Jackson* at ¶ 45. *See also State v. Cihon*, 4th Dist. Gallia No. 22CA13, 2023-Ohio-3108, -- N.E.3d --, ¶ 31 ("While we understand that this procedure appellant outlines could indeed create a hardship for appellant's counsel, as an intermediate appellate court we may not depart from Supreme Court of Ohio directives and statutory requirements.").

Accordingly, based upon the Supreme Court of Ohio's holding in *Johnson* as well as this Court's recent reasoning in *Jackson*, the statutory claims raised in McHargue's third assignment of error are overruled.

{¶46} Further, with respect to McHargue's alternative claims which assert constitutional and equal protection violations, the Supreme Court of Ohio has explained that:

> the question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court. *See State v. Woodards* (1966), 6 Ohio St.2d 14, 215 N.E.2d 568 [35 O.O.2d 8]. This rule applies both to appellant's claim that the statute is unconstitutionally vague on its face and to his claim that the trial court interpreted the statute in such a way as to render the statute unconstitutionally vague. Both claims were apparent but yet not made at the trial court level.

*State v. Awan*, 22 Ohio St.3d 120, 122-123, 489 N.E.2d 277 (1986).

Because McHargue's trial counsel was mandated to return the copy of the PSI at trial and because R.C. 2951.03(D)(2) did not require other personnel/departments who had a copy of the PSI to return it, this challenge could have been raised at trial, but it was not. *See State v. Stutes*, 4th Dist. Gallia Nos. 22CA6, 22CA7, 2023-Ohio 4582, ¶ 45. Because McHargue's constitutional challenge to R.C. 2951.03 could have been raised at the trial court level, but was not, we decline to address it for the first time on appeal.

{¶47} Having found no merit in any of the assignments of error raised by McHargue, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J., and Wilkin, J., Concur in Judgment and Opinion.


For the Court,

_____
Jason P. Smith
Presiding Judge


**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**